FILED
97 MAY 28 AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GEORGE MILLER,

Plaintiff,

v.

U.S. DEPARTMENT OF AGRICULTURE
FARM SERVICES AGENCY, et al.,

Defendants.

CV96-H-496-NE

ENTERED
MAY 28 1997

MEMORANDUM OF DECISION

Presently before the Court is the April 8, 1997 motion to dismiss or for summary judgment filed by defendants. Pursuant to an Order entered April 10, 1997, the motion was deemed submitted, without oral argument, as of May 8, 1997.

I. Procedural History

Plaintiff commenced this action by filing a complaint in this Court on February 26, 1996. The complaint alleged that plaintiff had been wrongfully removed from his employment as County Executive Director ("CED") of the Madison County Office of the United States Department of Agriculture's Agricultural Stabilization and Conservation Service ("ASCS"). More specifically, plaintiff alleged that his constitutional rights to due process and free speech had been infringed by his removal, and plaintiff sought relief under 42 U.S.C. § 1983 and § 1985(3).

18

The complaint named as defendants the USDA's Farm Services Agency (a successor agency to the ASCS), the USDA Office of the Inspector General ("OIG"), and numerous officials that participated in plaintiff's termination. These officials were members of the Alabama State ASCS Committee, and other officials within the ASCS and OIG.

Later, it became clear that plaintiff's claims, rather than being founded upon 42 U.S.C. § 1983, were in reality based upon the Supreme Court's holding in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), since the defendants were all federal officials. (Plaintiff's Memo. in Opp. to Summary Judgment at 2).

Defendants filed the present motion on April 8, 1997, asserting various defenses. Defendants also favored the Court with a complete transcript of the administrative proceedings that led to plaintiff's termination, as well as a brief. Plaintiff responded by filing his own affidavit, transcripts of administrative hearings, portions of plaintiff's personnel file, and plaintiff's awards and letters of commendation. Plaintiff also filed a brief in opposition to the motion.

## II. Standard for Evaluating a Motion to Dismiss

Although the parties have inundated the Court with evidentiary materials, the issues raised by the present motion

are entirely legal in nature and can be resolved without reference to any evidence. Therefore, the Court will treat the present motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In doing so, the Court will accept all facts alleged in the complaint as true, and will grant the motion only if it appears that plaintiff can prove no set of facts that would entitle him to relief. E.g., South Florida Water Management Dist. v. Montalvo, 84 F.3d 402, 406 (11th Cir. 1996).

## III. Background

Here, rather than setting forth a statement of facts, the Court will describe briefly the organizational framework of the ASCS as it existed during plaintiff's employment, followed by a recitation of the facts alleged in the complaint regarding plaintiff's termination.

Pursuant to 16 U.S.C. § 590h(b)(5), the Secretary of Agriculture was required to develop programs for agricultural land stabilization and conservation. Under the ASCS regulations, promulgated pursuant to 16 U.S.C. § 590h(b)(5)(E), the USDA oversaw these programs through a regional Deputy Administrator for State and County Operations. Under the supervision of the Deputy Administrator would be "state committees," appointed by the Secretary of Agriculture and "fairly representative of the farmers in the state." 16 U.S.C. § 590h(b)(5)(A); 7 C.F.R. §

7.4. These state committees were "responsible for carrying out the agricultural conservation program, the production adjustment and price support programs, the acreage allotment and marketing quota programs, the wool and mohair incentive payment program, and any other program or function assigned by the Secretary." 7 C.F.R. § 7.20. Under the supervision of the state committee would be county committees that would serve to implement these programs at the county level. 7 C.F.R. § 7.21(a). The members of the county committees were not appointed, but rather were elected from among the farmers in the county. 7 C.F.R. §§ 7.5, 7.9, 7.15. Subordinate to these county committees were "local" or "community committees," also elected from among the farmers in the particular locality. See 7 C.F.R. §§ 7.5. 7.9, 7.22.

One of the functions of the county committees was to employ a County Executive Director ("CED"). 16 U.S.C. § 590h(b)(5)(E); 7 C.F.R. § 7.21(b)(2). The CED's job description was to "execute the policies established by the county committee and be responsible for the day-to-day operations of the county office." 7 C.F.R. § 7.25.

Plaintiff was appointed CED for the Madison County ASCS on June 6, 1983. In March 1994, the Alabama State ASCS Committee held a hearing to consider charges that plaintiff had violated ASCS policies and acted improperly when he received information regarding possible criminal activity related to his position. The State Committee, pursuant to 7 C.F.R. § 7.28, voted to remove

plaintiff from his employment. Plaintiff alleges that this March 1994 decision by the State Committee was motivated by retaliation against plaintiff for his Republican Party affiliation. Plaintiff also alleges that he was denied due process in connection with this hearing.

After the State Committee removed plaintiff from his office, plaintiff requested and received, pursuant to 7 C.F.R. §§ 7.30 and 7.31, a hearing before the Deputy Administrator. A designee of the Deputy Administrator held a two-day hearing, and then issued a report and recommendation to the Deputy Administrator. See 7 C.F.R. § 7.32. That recommendation was that plaintiff's employment should be terminated, and the Deputy Administrator concurred. Plaintiff alleges that the Deputy Administrator's decision was also tainted by unconstitutional motives and a deprivation of due process.

Plaintiff was thus terminated from his employment as Madison County CED in October 1994. Because the Deputy Administrator's action was "final and not subject to further administrative review," 7 C.F.R. § 7.30, plaintiff commenced this action.

## IV. Analysis

Although defendants present various arguments in their motion, the Court reaches only one issue: whether plaintiff is precluded from maintaining a Bivens action by the existence of

administrative remedies for his alleged wrongful termination.

With respect to this issue, the Court is confronted with an issue apparently never addressed by the Eleventh Circuit, but squarely addressed by two other courts of appeals. In Krueger v. Lyng, 927 F.2d 1050 (8th Cir. 1991), the Eighth Circuit held that a former CED could maintain a Bivens action based upon an alleged unconstitutional termination from employment. The Ninth Circuit addressed the same issue in Moore v. Glickman, ___ F.3d ____, 1997 WL 226197 (9th Cir. May 7, 1997), but reached the opposite conclusion. Thus, the Court must decide which of these opinions carries more persuasive weight.

The controlling law with respect to plaintiff's Bivens claim was set out by the Supreme Court in Bush v. Lucas, 462 U.S. 367 (1983) and Schweiker v. Chilicky, 487 U.S. 412 (1988). According to Bush and Chilicky, it is Congress, not the courts, that is in the better position to weigh the conflicting policies inherent in creating remedies for federal employees. Bush, 462 U.S. at 389. Thus, Congress may preclude a court-created constitutional tort claim by express statutory direction or by creating an exclusive statutory remedy for constitutional claims. Chilicky, 487 U.S. at 421. In addition, even in the absence of some affirmative Congressional statement, a court should decline to allow a Bivens action where there are "special factors counseling hesitation." Id. The Court explained the nature of these "special factors" as follows:

> In sum, the concept of "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional action has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

Id. at 423. In other words, a court should decline to allow a Bivens claim where it appears that Congress consciously created certain remedies and declined to create other remedies. However, on the other hand, if it appears that Congress simply neglected to provide remedies through inadvertence or oversight, a court should create a remedy through Bivens. Krueger, 927 F.2d at 1057.

If plaintiff were a federal employee entitled to the procedural protections of the Civil Service Reform Act (CSRA), it would be clear that his Bivens claims would fail. Both the Supreme Court in Bush and the Eleventh Circuit, in Hallock v. Moses, 731 F.2d 754 (11th Cir. 1984), held that the scheme of remedies created by the CSRA evinced a Congressional intent to provide federal employees with certain remedies and no others. Deferring to this policy judgment, the Supreme Court held in Bush that no additional remedies would be created under Bivens. Bush, 462 U.S. at 389-90. See also McCollum v. Bolger, 794 F.2d 602, 607 (11th Cir. 1986) (holding a Bivens action by two postal

workers foreclosed because grievance procedures established by Congress offered "an adequate measure of relief" for constitutional claims).

However, it is undisputed here that plaintiff is not covered by the remedial provisions of the CSRA, because he falls outside the definition of a federal "employee" contained in 5 U.S.C. § 2105. See Hedman v. Department of Agriculture, 915 F.2d 1552, 1554 (Fed. Cir. 1990). In order to fit that definition, a person must be appointed by the President or another federal employee. Here, plaintiff was appointed CED by the members of the Madison County ASCS Committee, who are elected farmers, not appointed federal employees. Because the members of the Madison County ASCS Committee were not federal employees under § 2105, plaintiff does not fit within the that section's definition of "employee."

In fact, it is undisputed that there are no statutory remedies that expressly apply to plaintiff or other employees of ASCS county committees. Rather, Congress enacted a general statute authorizing the Secretary of Agriculture to promulgate regulations, and the Secretary has enacted regulations that set forth the administrative remedies available to ASCS county employees. See 7 C.F.R. §§ 7.28 to 7.33. These regulations provide for a system of notices, hearings, and appeals within the Department of Agriculture.

In addition, although the regulations are silent on the issue of judicial review, it is clear that ASCS employees may

seek judicial review of their terminations under the rubric of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Cf. Berry v. Hollander, 925 F.2d 311, 315 (9th Cir. 1991); Maxey v. Kadrovach, 890 F.2d 73, 75-76 (8th Cir. 1989); Franks v. Nimmo, 796 F.2d 1230, 1239-40 (10th Cir. 1986); Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1219 (5th Cir. 1985) (all holding that agency hearings regarding employee terminations are final agency actions reviewable under the APA). Under the APA, an agency decision may be reversed if it is "arbitrary, capricious, an abuse of discretion," "contrary to constitutional right," or "without observance of procedure required by law." 5 U.S.C. § 706(2). This mechanism for judicial review, coupled with the administrative procedures available to ASCS employees, certainly gives such employees an adequate remedy for any constitutional violations that may occur during termination.

However, the Supreme Court's decision in Chilicky shifted the focus away from a court's decision about the adequacy of the remedies, instead concentrating on the issue of whether the remedial scheme was the result of Congressional design or inadvertence. Chilicky, 487 U.S. at 423; Moore, 1997 WL 226197, at *3-5; Krueger, 927 F.2d at 1055 n.6. Thus, this Court's judgment about the adequacy of the protections afforded ASCS county employees is irrelevant; the Court need only determine whether Congress made a judgment about the scope of those protections. If so, the Court must defer to that judgment. If

not, the Court should allow plaintiff's Bivens claims to proceed.

The Eighth Circuit approached this inadvertence issue in Krueger by noting that Congress enacted the CSRA to provide a comprehensive set of remedies for most federal employees. Krueger, 927 F.2d at 1054. The Eighth Circuit noted, however, that the unique employment status of county ASCS employees -- that is, their exclusion from the CSRA's protections -- was the result of a decision made by the Secretary of Agriculture, not Congress. Id. at 1056. The Eighth Circuit also correctly noted that Congress had provided no statutory guidance with respect to the protections to be afforded county ASCS employees; the method for hiring those employees and the remedies available to them all came from the regulations in 7 C.F.R. part 7, which in turn were based on a very general grant of power to make "such regulations as the Secretary considers necessary" in 16 U.S.C. § 590h(b)(5)(E). Krueger, 927 F.2d 1055.

In light of this general enabling statute, and the absence of any express statement by Congress regarding the protections to be afforded county ASCS employees, the Eighth Circuit concluded that Congress had inadvertently neglected to specify the remedies available to such employees. "It ... seems plain to us that Congress has never given a moment's thought to the question of what sort of remedies should be available to ASCS county employees." Id. at 1057. Because the Eighth Circuit saw no indication of Congressional intent to foreclose a Bivens action,

it allowed the plaintiff's claim to proceed.

The Ninth Circuit, however, in Moore, saw indications that Congress had consciously considered the unique employment status of county ASCS employees. The Ninth Circuit noted that, although county ASCS employees did not fall within the definition of "employee" in 5 U.S.C. § 2105, Congress had expressly included county ASCS employees in other federal employment statutes. Moore, 1997 WL 226197, at *4. For example, the definition of "employee" that controls participation in the federal civil service retirement programs includes both "an employee as defined by section 2105 of this title" and "an individual employed by a county committee established under section 590h(b) of title 16." 5 U.S.C. § 8331(1). The definitions of "employee" regarding participation in federal employee life and health insurance programs are identical, listing both § 2105 employees and expressly including ASCS county employees. See 5. U.S.C. §§ 8701(a), 8901(1). Congress also made express provisions for county ASCS employees with regard to pay adjustments (5 U.S.C. §§ 5306(a)(1)(C) and 5334(e)), severance pay (5 U.S.C. § 5595(2)(B)) and annual and sick leave (5 U.S.C. § 6312(a)(1)). In addition, county ASCS employees who transfer to CSRA-covered positions are entitled to credit for their ASCS service when reduction in force actions are taken. See 5 U.S.C. § 3502(a).

Finally, the Ninth Circuit noted that, as part of the 1994 restructuring of the USDA that replaced the ASCS with the

Consolidated Farm Service Agency, Congress expressly recognized that some agency employees were not federal employees:

> In the implementation of programs and activities assigned to the Consolidated Farm Service Agency, the Secretary may use interchangeably in local offices of the Agency both Federal employees of the Department and non-Federal employees of county and area committees established under section 8(b)(5) of the Soil Conservation and Domestic Allotment Act (16 U.S.C. § 590h(b)(5)).

7 U.S.C. § 6932(e)(1).

To the Ninth Circuit, these nine express statutory provisions dealing with county ASCS employees demonstrated that Congress was fully aware of the unique status of those employees and the remedies available to them under the ASCS regulations. Moore, 1997 WL 226197, at *5. Because Congress had expressly recognized that county ASCS employees were not covered by the CSRA by virtue of the ASCS regulations, and had expressly given ASCS employees certain rights, the Ninth Circuit concluded that their exclusion from the CSRA "cannot be characterized as inadvertent." Id. The Ninth Circuit went on to note that county ASCS employees could obtain judicial review of final employment decisions under the APA. Id. at *5-6. Because the Ninth Circuit believed that Congress was fully aware of the rights and remedies given to county ASCS employees, the court declined to allow additional remedies under Bivens. Id. at *7.

The Court believes that the Ninth Circuit's reasoning in

Moore is more persuasive than that in Krueger. Krueger's assertion that Congress was completely unaware of the employment status of county ASCS employees under the regulations cannot be sustained in light of the express statutory provisions dealing with such employees. Indeed, 5 U.S.C. §§ 8331, 8701, and 8901 expressly recognize that county ASCS employees are not covered by the CSRA, because each statute lists such employees separately from employees defined by § 2105. Congress was apparently fully aware of the ASCS regulations, and chose to add county ASCS employees to the definition of "employee" with respect to some employment rights, but failed to do so in other areas. This is all the evidence necessary for the Court to conclude that Congress' action with respect to county ASCS employees was not "inadvertent." Indeed, it is apparent that Congress was satisfied with the rights accorded to such employees under the regulations and the APA. The Court is required to defer to this Congressional choice under Bush and Chilicky, and thus holds that plaintiff's Bivens claims fail as a matter of law. And, although plaintiff could seek relief under the APA, there is no request for relief under the APA contained in the complaint. Thus, the complaint, in its entirety, must be dismissed under Rule 12(b)(6).

An appropriate Order of Dismissal will be entered.

DONE this 28th day of May, 1997.

SENIOR UNITED STATES DISTRICT JUDGE